**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| VA 365 LLC,<br><br>Plaintiff,<br><br>v.<br><br>SINE TRADING INTERNATIONAL LLC; WENHAI FU, *also known as Wayne Fu*; and DRAYAGE SPOT INC.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 2:25-CV-763 |

**MEMORANDUM ORDER**

In the fall of 2022 Defendant Sine Trading International, owned by Defendant Wenhai Fu, breached its commercial lease with its landlord, Plaintiff VA 365. ECF 20 at ¶¶ 13, 18. In a separate case, VA 365 sued, ECF 20-2 at 3–19, and, on April 28, 2025, a New Jersey federal court found in VA 365's favor, awarding it a judgment of $521,866.08 plus attorneys' fees against Sine, *id.* at 69–95. ECF 20 at ¶¶ 14–17.

After trial but before judgment, VA 365 alleges shenanigans commenced. For example, VA 365 says that Sine strangely repaid a $449,066.01 loan to Mr. Fu by transferring a property in the Manchester neighborhood of Pittsburgh, valued at a much higher amount, $689,130.00. *Id.* at ¶¶ 19–22; ECF 20-2 at 101–07. Also during that intermediary period, Mr. Fu allegedly incorporated a new company, Drayage Spot, and Drayage allegedly took over the software platform portion of Sine's business. ECF 20 at ¶¶ 25–30; ECF 20-2 at 120–21.

Claiming that Sine completed both of these transactions to avoid payment of the New Jersey judgment, VA 365 brought this lawsuit. VA 365 alleges two Pennsylvania Uniform Voidable Transfers Act (PUVTA) claims and one civil-conspiracy claim. As part of its PUVTA claims, VA 365 seeks to pierce Sine's corporate veil and hold Mr. Fu and Drayage liable for any portion of the New Jersey

judgment Sine cannot pay. ECF 20. In response, Defendants filed a partial motion to dismiss, arguing that the Court should dismiss the following: VA 365's veil-piercing claims against Mr. Fu and Drayage, as well as its civil-conspiracy claim and requests for punitive damages and attorneys' fees against all three Defendants. ECF 23.

Upon careful consideration, the Court will grant in part and deny in part Defendants' partial motion to dismiss. The Court will dismiss the veil-piercing claims, but allow VA 365's conspiracy claim and requests for punitive damages and attorneys' fees to proceed.

**Veil-piercing claims.** To start, VA 365 hasn't plausibly pled enough to overcome the "strong presumption in Pennsylvania against piercing [Sine's] corporate veil" as to either Mr. Fu or Drayage. *Lumax Indus., Inc. v. Aultman*, 669 A.2d 893, 895 (Pa. 1995).

"[C]orporate entit[ies] should be recognized and upheld, unless specific, unusual circumstances call for an exception." *Zubik v. Zubik*, 384 F.2d 267, 273 (3d Cir. 1967). Here, VA 365 contends that the Court should apply the equitable doctrine of piercing the corporate veil because, otherwise, "an injustice would result and/or fraud would be sanctioned." ECF 20 at ¶¶ 51, 77; *see Plastipak Packaging, Inc. v. DePasquale*, 75 F. App'x 86, 88 (3d Cir. 2003) (finding that "Pennsylvania generally recognizes that the corporate veil may be pierced 'whenever necessary to avoid injustice[,]'" quoting *Rinck v. Rinck*, 526 A.2d 1221, 1223 (Pa. Super. Ct. 1987)). But VA 365's arguments fail on both veil-piercing theories it asserts.

First, as to whether Sine was Mr. Fu's alter ego, though Mr. Fu appears to have owned and controlled "the corporation to be pierced," *Advanced Tel. Sys., Inc. v. Com-Net Pro. Mobile Radio, LLC*, 846 A.2d 1264, 1278 (2004), the weight of Pennsylvania's totality-of-the-circumstances test goes against such a finding. *See Lumax*, 669 A.2d at 895 (finding "the factors to be considered in disregarding the corporate form as follows: undercapitalization, failure to adhere to corporate

formalities, substantial intermingling of corporate and personal affairs[,] and use of the corporate form to perpetrate a fraud") (cleaned up); *E. Mins. & Chemicals Co. v. Mahan*, 225 F.3d 330, 333 n.7 (3d Cir. 2000) ("Factors considered under Pennsylvania law . . . with respect to the alter ego theory[,] include, but are not limited to, the following: The failure to observe corporate formalities; non-payment of dividends; insolvency of debtor corporation; siphoning the funds from corporation by dominant shareholders; non-functioning of other officers and directors; absence of corporate records; whether the corporation is a mere fa[ç]ade for the operations of a common shareholder or shareholders; and gross undercapitalization.") (cleaned up).

True, Sine's loan repayment to Mr. Fu indicates some level of intermingling of affairs, but the other factors weigh heavily against piercing the corporate veil. Sine and Mr. Fu appear to have observed corporate formalities and maintained corporate records, including recording the deed at issue and filing a state transfer tax form with the Pennsylvania Department of Revenue. ECF 20-2 at 101–107. Except for the allegedly fraudulent transactions at issue, VA 365 pleads no history of Mr. Fu siphoning funds or otherwise using the corporate form to perpetrate fraud. And there is no indication that Sine is a mere façade for Mr. Fu's operations: Sine has an operating website, ECF 24 at 5 n.1, and even VA 365 admits that Sine continues to operate at least a portion of its business, *see* ECF 20 at ¶¶ 25, 29.

Most significantly, VA 365 hasn't shown that Sine is undercapitalized. Though a "defrauded creditor or 'victim' of a business transaction with an undercapitalized corporation . . . often has a strong case for piercing the veil of a 'sham' corporation[,]" VA 365 has only pled upon information and belief that Sine is insolvent. *Zubik*, 384 F.2d at 273. The New Jersey judgment appears to have gone unpaid for some time, but Sine's failure to pay is distinct from an inability to pay. In sum, these factors don't overcome the presumptive rule of upholding the respect for the corporate form.

Second, for similar reasons, VA 365 hasn't sufficiently pled that Drayage had "such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist" under the enterprise theory of piercing the corporate veil. *Mortimer v. McCool*, 255 A.3d 261, 286–87 (Pa. 2021). Again, the weight of the factors go against VA 365. *See Seven Springs Mountain Resort, Inc. on behalf of Sikirica v. Hess*, No. 3:21-CV-6, 2022 WL 1004178, at *8 (W.D. Pa. Apr. 4, 2022) (Haines, J.) ("[T]he following factors set forth in *Miners, Inc. v. Alpine Equip. Corp.*, 722 A.2d 691 (Pa. Super. [Ct.] 1998) [are] relevant to the analysis for enterprise liability: (1) identity of ownership, (2) unified administrative control, (3) similar or supplementary business functions, (4) involuntary creditors, and (5) insolvency of the corporation against which the claim lies.").

Mr. Fu owns and operates Sine and appears to own and operate Drayage—also a software-focused logistics business—out of the same Manchester property. ECF 20 at ¶¶ 27, 70–71. But VA 365 hasn't shown that Sine is insolvent. And VA 365 is a voluntary creditor that had a chance to assess the risk of a Sine default before leasing the property giving rise to the New Jersey judgment. *See Miners*, 722 A.2d at 695 n.2 (alternatively holding against piercing the corporate veil because "it does not appear that Miners is an involuntary creditor.").[1]

[1] Though the Pennsylvania Supreme Court has expressed some skepticism over the voluntary/involuntary creditor distinction, *Mortimer,* 255 A.3d at 279, this idea remains good law. And it makes good sense, at least in a case like this one—which is a commercial lease dispute between two sophisticated parties. In such a business deal, the contracting parties—particularly, the landlord, VA365—can *ex ante* contract for security. *See id.* at 272 n.36 (noting that "[v]oluntary creditors . . . have the opportunity to investigate factors bearing upon their risk of loss before entering into a transaction with a corporate counterparty," and quoting *Piercing Piercing: An Attempt to Lift the Veil of Confusion Surrounding the Doctrine of Piercing the Corporate Veil*, 76 OR. L. REV. 853, 907 (1997) for the analysis that, "[O]ne must always focus on the reasons why the corporation was liable to contract creditors or tort victims in the first place. For contract creditors, corporate liability is what the parties agreed; for tort victims the goal of liability is to internalize accident costs. . . . The key to internalizing accident costs is insurance. Hence, lack of insurance to cover

Thus, considering all of the relevant factors here, VA 365 hasn't pled plausible veil-piercing claims.

**Civil-conspiracy claim.** The other claim that Defendants challenge is the civil-conspiracy claim, and the Court finds that it is plausibly pled. Defendants make two arguments—one fails and one is premature.

Defendants' first argument is that the conspiracy claim is duplicative of the PUTVA claims, and so should be dismissed on that ground. ECF 24 at 12. The Court disagrees. The claims aren't entirely duplicative—for example, only one conspirator need commit an underlying unlawful act, and then the other conspirators can be jointly and severally liable for it through the conspiracy. *See Simonds v. Boyer*, No. 2:21-CV-841, 2025 WL 475363, at *9 n.12 (W.D. Pa. Feb. 12, 2025) (Ranjan, J.) ("[S]o long as a plaintiff has alleged a tort against one member of the conspiracy, a plaintiff need not allege an underlying tortious claim against every co-conspirator.") (quotation omitted).

Defendants' second argument is premature. They argue that you need at least two participants for there to be conspiracy, and that Mr. Fu doesn't count because, as the sole owner of Sine, he cannot essentially conspire with himself. ECF 24 at 10–11.

That depends. If Mr. Fu was acting in his capacity as the owner of Sine when engaging in some of these transactions, then Defendants may be right. But if he was acting solely in a personal capacity, outside his scope as a Sine agent, owner, or officer, then he might be considered a separate conspirator. *See Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313 (3d Cir. 2003) ("a conspiracy between a corporation and an officer . . . may exist only if the officer is acting in a personal, as opposed to official, capacity. That is, an exception [to the 'intracorporate

---

reasonably foreseeable risks provides the primary grounds to pierce in favor of tort claimants.").

conspiracy doctrine'] exists when . . . employees have acted for their sole personal benefit.") (cleaned up). More discovery is needed to flesh this out. So the motion to dismiss will be denied as to the conspiracy claim, and the Court can re-visit it after discovery.

**Punitive damages and attorneys' fees.** Defendants also move to dismiss these forms of relief requested in the amended complaint. ECF 24 at 12-13. Whether this case rises to the level of punitive damages or an award of attorneys' fees is also more appropriately resolved after discovery. So the Court denies this aspect of the motion, without prejudice.

*****

For these reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion to dismiss. Those portions of Counts 1 and 2 that seek to pierce the corporate veil are **HEREBY DISMISSED WITH PREJUDICE.**[2]

DATED this 20th day of August, 2026.

BY THE COURT:

/s/ J. Nicholas Ranjan
United States District Judge

---

[2] Because VA 365 already amended its original complaint (ECF 1) after Defendants' original motion to dismiss (ECF 17), the Court finds that further amendment would be inequitable and futile. So further leave to amend will not be granted. *See, e.g.*, *Cohen v. Hot House Beauty Ltd.*, No. 2:22-CV-1646, 2023 WL 4405826, at *1 n.1 (W.D. Pa. July 7, 2023) (Stickman, J.) (dismissing with prejudice because "Plaintiff has already amended his complaint once and the Court finds further amendment would be futile"); *Timko v. NSPA Lounge LLC*, No. 2:23-CV-1307, 2026 WL 890242, at *2 (W.D. Pa. Apr. 1, 2026) (Ranjan, J.) (finding "further amendment would be futile and inequitable" "[b]ecause the above defects are legal and Plaintiffs already have amended their complaint in an already expansive manner"); *Lloyd v. Cohen*, No. 5:25-CV-4512, 2026 WL 687090, at *6 (E.D. Pa. Mar. 11, 2026) (finding "that leave to amend would be futile" "for the reasons set forth . . . and because Lloyd previously amended her complaint after receiving notice of Defendants' arguments to dismiss").